FINAL COPY
294 Ga. 388

S13A1441.  RUSH v. THE STATE.

THOMPSON, Chief Justice.

Appellant LaForrest Rush was convicted of malice murder and possession of a firearm by a convicted felon in connection with the shooting death of Kasey Cogburn.[1]  He appeals from the denial of his motion for new trial contending the evidence was insufficient to support the verdict and trial counsel rendered ineffective assistance.  Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence shows the following.  On October 22, 2008, Cogburn, a small time marijuana dealer, obtained some marijuana from a drug dealer known as "Big" which he

[1] The crimes occurred on October 22, 2008.  Appellant was indicted by a Fulton County grand jury on January 30, 2009, on charges of malice murder, two counts of felony murder, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Trial commenced on July 5, 2011 and, on July 8, 2011, a jury convicted appellant of malice murder and possession of a firearm by a convicted felon.  He was sentenced on July 21, 2011 to life imprisonment for malice murder and five years concurrent for possession of a firearm by a convicted felon.  Appellant filed a motion for new trial on July 21, 2011 and an amended motion for new trial on August 2, 2012.  The motion for new trial was heard on October 4, 2012, and was denied by an order entered April 16, 2013.  Appellant filed a notice of appeal on May 3, 2013.  The appeal was docketed to the September 2013 term of this Court and submitted for a decision on the briefs.

arranged to sell to Travious Taylor. On his way to conduct the deal and thereafter, Cogburn stayed in touch with his girlfriend, Olivia Gagne, keeping her apprised of his whereabouts and what was transpiring through phone calls and texts. Cogburn let her know he was on his way to meet Big, Taylor, and a person Cogburn referred to as Taylor's "cousin." According to Gagne, "cousin" is street slang for someone who is a very close friend.

After getting the marijuana from Big and completing the sale with Taylor and Taylor's friend, who the jury was authorized to conclude was appellant, Cogburn called Gagne to inform her he was following the two men back to Taylor's "trap"[2] to obtain five pounds of marijuana they had agreed to front him. Upon arriving at the trap, which was an apartment leased to appellant, the men opened the package of marijuana and discovered a problem with the drugs. They confronted Cogburn who attempted to call Big. Unable to reach Big, Cogburn then placed a short call to Gagne, telling her the men were accusing him of setting them up and he was afraid because Taylor had pointed a gun at his head. Sometime later Cogburn called Gagne again, crying and nearly

---

[2] According to Gagne's testifimony, a "trap" is a house where illegal drugs are sold.

hysterical, saying "Shorty, I have to go. I love you," before hanging up. The evidence shows that Cogburn was shot as he attempted to leave and subsequently bled to death in the doorway of the apartment.

That evening, appellant's neighbor, Juanita Williams, was sitting outside on her porch when she heard gunshots. She saw a body on the porch of appellant's apartment and observed appellant and Taylor step over the body as they exited to flee in Taylor's truck. Officers responding to the scene found Cogburn's body lying on the porch in the open doorway of appellant's apartment.

Shortly thereafter, appellant's landlord and a police detective each called appellant's cell phone. In both instances, a man answered "hello" and then hung up as soon as the caller said appellant's name. Appellant later claimed he did not know Taylor (although Taylor was listed as an emergency contact on appellant's lease) and that he had been in Savannah at the time of the murder. Cell phone records indicated, however, that appellant's cell phone had been pinging off a tower close to his apartment at the time the murder occurred.

1. Appellant first challenges the sufficiency of the evidence arguing the State failed to prove he was a party to the crime beyond a reasonable doubt. See

3

OCGA § 16-2-20. Construing the evidence most strongly in support of the verdict, we find it was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Appellant asserts the circumstantial evidence presented by the State established nothing more than his mere presence at the scene of the shooting and mere association with Taylor, the actual shooter. We disagree. While mere presence at the scene of a crime is insufficient to prove that a defendant was a party to the crime, see Jones v. State, 292 Ga. 656, 658 (740 SE2d 590) (2013), here the evidence was sufficient for the jury to draw reasonable inferences about appellant's participation in the murder. Gagne testified she learned from Cogburn that the drug sale included both Taylor and Taylor's close friend, and that Cogburn followed these same two people back to Taylor's trap which was actually an apartment leased to appellant. In addition, appellant and Taylor were close enough friends for Taylor to be listed as an emergency contact on appellant's lease, appellant was present at the apartment when Cogburn was shot, appellant fled the murder scene with Taylor, and appellant subsequently lied about key facts when questioned by police, including his whereabouts at the

4

time of the murder. "Presence, companionship, and conduct before and after an offense is committed are circumstances from which participation in the criminal act may be inferred." Thornton v. State, 292 Ga. 87, 88 (734 SE2d 393) (2012) (quoting Curinton v. State, 283 Ga. 226, 228-229 (657 SE2d 824) (2008)). Based on the above evidence and Gagne's testimony that Cogburn told her "they" thought he set "them" up, the jury could reasonably infer that "they" included appellant and that appellant was a participant along with Taylor in both the drug transaction and Cogburn's murder. Accordingly, we find the evidence was sufficient for the jury to conclude appellant was a party to the crimes.

2. Appellant next contends he was deprived of his constitutional right to effective assistance of counsel at trial based on trial counsel's failure to object to certain remarks made by the prosecutor during closing argument. To prevail on his claim of ineffective assistance, appellant must show that trial counsel's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of his trial would have been different. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984); White v. State, 283 Ga. 566, 569 (662 SE2d 131) (2008). To show deficient

5

performance, appellant "must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." White v. State, 281 Ga. 276, 281 (637 SE2d 645) (2006) (punctuation omitted). In the event appellant fails to satisfy either the "deficient performance" or "prejudice" prong of the Strickland test, this Court is not required to examine the other prong. Sifuentes v. State, 293 Ga. 441, 445 (4) (746 SE2d 127) (2013).

(a) With respect to his first claim, appellant alleges trial counsel was ineffective for failing to object to the prosecutor's statement that "the guilty man flees but the righteous man stands bold as a lion." Appellant claims this remark constituted an improper comment on his failure to come forward.

"It is a bright-line rule in Georgia that the State may not comment on either a defendant's silence prior to arrest or failure to come forward voluntarily." Sanders v. State, 290 Ga. 637, 640-641 (723 SE2d 436) (2012); Reynolds v. State, 285 Ga. 70, 71 (673 SE2d 854) (2009). However, evidence showing that a defendant attempted to evade arrest is admissible as evidence of flight and statements about flight are proper as circumstantial evidence of guilt.

6

Id.  See <u>Evans v. State</u>, 288 Ga. 571, 574-575 (707 SE2d 353) (2011).

Here, the record reveals that the prosecutor's statement concerned appellant's inconsistent and evasive statements to police with respect to his location at the time of the murder, rather than his failure to come forward. Although the complained of statement in this case is similar to one found to be an improper comment on a defendant's right to remain silent in <u>Scott v. State</u>, 305 Ga. App. 710, 713 (700 SE2d 694) (2010), there the prosecutor's statement, which included additional language asking why he (Scott) failed to give the police a statement if he "hadn't done anything," was clearly directed at the defendant's failure to turn himself in after having been informed the police were looking for him. Id. at 713.  In the instant case, the prosecutor's comment was directed at appellant's actual statements to police that he was in Savannah at the time of the murder despite evidence to the contrary.  As a prosecutor has the right to argue reasonable inferences from the evidence, see <u>Smith v. State</u>, 279 Ga. 48, 50 (610 SE2d 26) (2005), the prosecutor's statement, which simply highlighted facts in evidence, was permissible and trial counsel's failure to object did not render her performance deficient.

(b) Appellant next asserts trial counsel was ineffective for failing to object

to statements made by the prosecutor which appellant contends implied his trial counsel was not seeking the truth or justice. However, in the complained of statements the prosecutor suggested that appellant, not appellant's trial counsel, was responsible for the "new lies" coming out at trial. While it is "wrong for the prosecuting attorney . . . to comment that opposing counsel knows the defendant to be guilty or knows his client's case is not meritorious," Estep v. State, 129 Ga. App. 909, 916 (201 SE2d 809) (1973) (emphasis omitted), the prosecutor's comments in this case did not violate this precept. "The wide leeway given to argue all reasonable inferences that may be drawn from the evidence during closing argument, encompasses pointing out inconsistencies in a defendant's testimony and urging that, on that basis, the defendant lied." Appling v. State, 281 Ga. 590, 592-593 (642 SE2d 37) (2007) (citations omitted). As in appellant's previous claim of error, the lack of objection from appellant's trial counsel to these statements did not constitute deficient performance.

Accordingly, appellant has failed to establish his trial counsel performed deficiently in responding to the prosecutor's remarks in closing argument, and his ineffective assistance of counsel claims lack merit. See Sifuentes, supra at 447.

8

Judgment affirmed. All the Justices concur, except Hunstein, J., who concurs in judgment only as to Division 2 (a).

Decided January 21, 2014.

Murder. Fulton Superior Court. Before Judge Adams.

Benjamin D. Goldberg, for appellant.

Paul L. Howard, Jr., District Attorney, Joshua D. Morrison, Paige Reese Whitaker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Andrew G. Sims, Assistant Attorney General, for appellee.